Gkeen, Judge,
delivered the opinion of the court:
Plaintiff is the owner of United States patent #1310045 dated July 15, 1919, as assignee of Dorsey F. Asbury to whom the patent was issued. It brings this suit alleging that the defendant has infringed its patent and seeks to recover damages. In defense the defendant sets up in substance that the patent is invalid and even if valid has not been infringed.
The patent covers a breech mechanism to be used in connection with breech loading cannon. Muzzle loading cannon have become obsolete in modern warfare and breech loaders had come into universal use long before Asbury obtained the patent in suit. In all such artillery the bore of the gun extends clear through and the missile and powder charge are introduced into the gun through the opening in the breech which is then closed and the gun is ready for firing. The loading is an easy matter but it is not so easy to-find satisfactory means for closing and reopening the breech when the gun is in use and numerous devices have been invented and patented for this purpose.
The apparatus used for closing the breech depicted in plaintiff’s patent disclosed a carrier fastened to the gun by a hinge which enabled it to be swung horizontally by the gunner either towards the opening and against the breech, block in beginning the closing operation, or away from *579 the gun in preparing it for reloading. To this carrier is'attached a breech plug which is intended to pass into the opening in the breech block and when the operation is completed to securely close it. This breech plug is slidably mounted upon a spindle attached to the carrier so as to permit within limits both longitudinal and rotary movements of the plug. The breech plug has interrupted stepped threads and blanks which are made to fit in corresponding threads and blanks in the opening into the gun. When the breech mechanism is swung away from the gun, the breech will be open so that the gun can be loaded. To close the breech after loading, the carrier is swung back towards the gun which causes the plug to enter the breech. After the carrier comes to rest against the breech of the gun the plug is propelled forward by the momentum acquired in the swing of the carrier, but its movement is controlled by a variable lead cam which permits it first to move forward (with some rotation as it proceeds) until the threads upon it are substantially in position to engage with the threads of the opening in the breech block and then by reason of variation in the direction of the cam caused to rotate, engaging the threads of plug and breech. The pitch of the threads causes the plug at the same time to have a slight forward movement. The plug is provided with a mushroom head which with the intervention of a gasket is by the movements described pressed against a substantially cylindrical gas check which is provided in the breech block. A more particular description of the construction and operation of the apparatus upon which plaintiff’s patent is based appears in Findings 4 and 5, and the claims of the patent so far as relied upon are set out in full in Finding 8.
The evidence shows that defendant constructed and used breech loading cannon of the general type shown in plaintiff’s patent. The mechanism used by defendant had a swinging carrier with a breech plug slidably mounted thereon and capable of both longitudinal and rotary movements. After the carrier was swung against the breech block in closing, the plug moved longitudinally for a short distance and then was given a rotary movement by which its threads were engaged with the threads of the breech block (causing *580 a slight forward motion) and the breech firmly and securely closed. The movements of the plug were controlled by a variable lead cam but defendant did not rely upon the momentum or energy acquired by the plug during the swing of the carrier to carry it through the movements necessary to complete the closure and a method was used for applying a positive force for this purpose. The construction and operation of the apparatus used by defendant are more particularly described in findings 11,12,18, and 14.
The brief of plaintiff asserts a three-fold novelty in its patent as follows:
a. A combination comprising a breech plug B mounted on the spindle C' of a swinging carrier C for both rotary and longitudinal movements, and means of any type located anywhere in the breech mechanism operated after the carrier is closed by energy stored in the plug to produce combined rotary and longitudinal movements of the plug in varying ratio.
b. A combination comprising a breech plug B mounted on the spindle C' of a swinging carrier C for both rotary and longitudinal movements, and a variable lead cam device located anywhere in the breech mechanism and operating in closing after the carrier has stopped, to translate the energy stored in the plug during carrier movements toward the breech to energy to rotate the plug in the locking direction; and operating in opening before the carrier begins its opening movement to translate the rotary momentum of the plug produced by unlocking rotation to move the plug rearwardly on the carrier spindle.
o. A combination comprising the structural and functional characteristics set forth in paragraph b except that the variable lead cam device is specifically located between the plug and carrier.
The arguments of plaintiff’s counsel oh the objections made to the findings and in support of the claims of plaintiff with reference to its patent are largely theoretical. This arises from the fact that there is no evidence that the apparatus described in plaintiff’s patent was ever constructed in an entirety and used in actual practice, nor was there even a working model produced or offered in evidence. So far as the actual workings of plaintiff’s device are concerned, the only argument presented is based upon testimony *581 as to how the apparatus used by defendant worked when deprived of part of its mechanism. This testimony will be considered later on.
In determining whether any new and useful invention is shown by the patent in suit it becomes necessary to consider the state of prior art. In Finding 16 six prior patents are cited which will hereinafter be considered with other matters in this connection.
Breech mechanisms of a type similar in a general way to the type depicted in plaintiff’s patent are very old. A model using a swinging carrier to which is attached a spindle upon which was mounted a plug capable of both longitudinal and rotary movements was introduced in evidence. It was invented at a time so far back that its age could not be definitely determined but it was undoubtedly long before the issuance of the patents to which reference is made above. Much is made in plaintiff’s argument of the fact that in plaintiff’s device the movement of the plug occurs after the carrier comes at rest against the gun. But this is necessarily so for such movements could not effectively be made until the plug was inserted in the breech and the carrier brought to rest. This same feature appears in the old model and the prior patents to which reference is made above, and it will be further considered hereinafter.
The construction of the breech plug with interrupted stepped threads and blanks as described in Finding 4 is old and no claim is made on account of it. The mounting of the breech plug upon a spindle permitting both longitudinal and rotary movements is disclosed in the British patent to Gledhill described in Finding 17, and also the patents to Dawson and Buckham referred to in Findings 19 and 20. The use of a variable lead cam device to control and direct the movements of the plug after the carrier came to rest against the gun was also old. It was disclosed in the Gled-hill patent in which the breech block was provided with a cam groove engaged by a stud on the carrier and it was stated that through a portion of its length “the angle of inclination of this groove corresponds with that of the screw threads of the breech plug * * *. But the re *582 maining portion of the groove which reaches the stud ■when the screw threads of the plug are released from those of the gun has its inclination or pitch increased”, the effect of which is described in the specifications. Obviously this depicts a variable lead cam although the term is not used in the specifications. This, as stated in the patent, •changes the movement of the plug. A somewhat similar ■ device is shown in the British patent to Dawson and Buck-ham as will be seen by examining Finding 19. The United States patent to Dawson and Buckham #681531 discloses substantially the same mechanism as the British patent and specifies particularly the use of a variable lead cam.
Reference was made in the testimony to two-way and three-way breech mechanisms. These terms are descriptive ■ and easily understood. A two-way mechanism has two dis'tinct movements which in closing would be first the swinging of the carrier together with the plug; and next, after the plug had entered the breech block, the rotary motion of the plug by which the threads of the plug are fitted into the threads of the breech block. These two movements are .reversed in opening the breech for reloading. In this kind of mechanism the plug is of such form that it can be inserted to a point where its threads will fit in the threads ■of the block when rotated without coming in contact with 'the sides of the opening in the breech block, and thus only, "two movements are necessary. See Finding 21.
When the three-way mechanism is used in closing the Breech there is first the swinging of the carrier with the; plug attached, next a movement of the plug forward, and third the rotary movement of the plug making use of the threads in the same manner as the two-way mechanism. In opening the breech the movement is reversed. The reason for this appears to be that when the carrier is swung the plug is introduced into the breech block on the line of an arc and smaller clearances exist between the plug and the breech block, with the result that the plug can not be' •completely inserted into the breech solely by the swinging movement but requires in addition a longitudinal movement ■prior to the rotary movement which locks the threads. All 'three-way mechanisms (including both that of the patent *583 in suit and tbe apparatus used by defendant) that are referred to in tbe evidence, use a cylindrical gas check which is claimed to be more effective than the type generally used with the two-way mechanism. Plaintiff’s apparatus was a three-way mechanism using a cylindrical gas check, but it is obvious that there was nothing new in such a combination.
It is specially urged on behalf of plaintiff that the variable lead cam described in its patent is used to “translate” the energy stored in the plug during carrier movements towards the breech to energy to rotate the plug in “the locking direction” in closing the breech, and in opening the variable lead cam is used to translate the rotary movement of the plug produced in unlocking to a rearward movement on the carrier spindle. We think the word “translate” is not used correctly here and that the correct term to be applied to the action described would be the word “transform” or “change.” However, as the meaning is plain enough, this is not important.
All cam devices are used for the purpose of controlling the direction of the movement of some part of a mechanism. When the line of the surface of the cam is uniform or constant, this movement is also uniform and constant; but when the direction of what might be called the face of the cam upon which a stud or roller moves is changed or varied, the result is always to change or vary the movement of the part of the mechanism which is controlled by the cam, and the extent of this change or variance corresponds to the change or variance in the surface of the cam. The use of cams in machinery is very old and the application of the rule above stated was well known to all persons skilled in the art. It was well understood that by-changing the line or pitch of the cam the movement of the part controlled by the workings of the cam would be-correspondingly varied, and it was only necessary to adjust, the variance in the line or pitch of the cam so as to produce the desired movement in the part affected. This was-old in the art. In fact, it is admitted in the exceptions; taken to the findings by plaintiff.
*584 Counsel lay special stress on the fact that some of the claims provide for means of any type located anywhere in the breech mechanism and operated after the carrier is closed by energy stored in the plug to produce combined rotary and longitudinal movement of the plug in varying ratio. But in such a combination there is nothing new unless it be in the operation by “stored energy” which will be discussed further on. We have already shown that in mechanisms of an earlier design means had been found for operating the plug and controlling its movements after the carrier had come to rest in such a manner as to produce both rotary and longitudinal movement. This was disclosed by prior patents. It adds nothing to the strength of plaintiff’s claims that the “means of any type” may be “located anywhere in the breech mechanism.” It was well known to one skilled in the art that different places could be used for the location of devices for controlling the movements of the plug and such differences were shown in the prior patents. We do not understand that it is claimed there was anjdhing new in this feature but that the plaintiff relies on the combination of these features with stored energy.
We have heretofore referred to the argument of the plaintiff based on the specification that the plug in plaintiff’s apparatus is operated after the carrier comes to rest against the breech block, and have held that this is necessary to make the operation effective. In any event, all of the three-way mechanisms referred to in the evidence were so operated and in this connection it may be noted that the patent issued to Dawson and Buckham is an example in which a catch was used to prevent any movement of the plug until the carrier came to rest “against the breech face of the gun.” This method of operation is old.
Several admissions are made in argument which support the conclusions we have stated above. It is admitted that “smooth conversion”, which is the same as “variable ratio”, is not the primary interest of the patent in suit, and an essential part of plaintiff’s patent seems to be abandoned when it is admitted in the exceptions to the findings that—
*585 The making of the contour of the cam in the patent in suit to obtain the result asserted by the patent is within the expected and required ability of anyone skilled in the art;
and in its main brief it is admitted that the element so specially relied upon as presenting novelty was already found in the Smith-Asbury mechanism, namely, the “useful utilization of stored energy of the plug as a breech operating force * * The findings are in accordance with these admissions.
So far we have considered what are clearly old concepts in old combinations. In this there is no invention. New combinations of old concepts with a new element and improved results will constitute invention, but we find nothing of this kind in plaintiff’s patent. The feature that is specially stressed as novelty is the use of energy stored in the plug by the swinging movement of the carrier to produce in connection with a variable lead cam both longitudinal and rotary movements in varying ratio. So far as the feature of varying ratio is concerned, it has already been shown that this must come into existence when a cam with a variable lead is applied. If there is a new feature in the patent, it is found only in the use of stored energy for the purpose above stated.
In determining this point it is important to consider how this “stored energy” arises and what use is made of it.
As before stated, in breech closing mechanisms of this general type the breech is closed by a plug which is mounted on a spindle attached to a carrier. In two-way mechanisms, the plug is rotatable upon the spindle. In three-way mechanisms it is slidably mounted so as to be capable of both longitudinal and rotary movement. .The carrier is attached to the gun on one side by a hinge which permits it to be swung away from the breech in preparing the gun for loading and back against the breech so as to insert the plug as part of the operation of closing. It is quite obvious that when the carrier is swung towards the breech of the gun in any apparatus of this type energy will be imparted to the plug which tends to propel it forward, and when the carrier comes to rest against the breech the force of this *586 energy must be expended in some way. This condition always arises in breech mechanisms using a swinging carrier to which the plug is attached. The existence of this force so created is but a manifestation of an elementary law of physics. So also energy will be imparted to the plug when it is unscrewed in starting the movement to open the breech. In plaintiff’s apparatus and under other patents a variable lead cam controls the application of this kinetic force which can not be dispensed with and is always present to some extent. The claim made on behalf of the plaintiff is that under its patent by this force alone, as directed and controlled by the cam device, the plug is carried through one or more of the movements that are required in order to securely and effectually close or open the breech, and this counsel contends is invention.
There is novelty in this claim, although, as we think, none in the apparatus. So far as shown by the evidence plaintiff is the first who was willing to rely or depend on stored energy alone to effect any of the necessary movements of the plug, but the Smith-Asbury patent mentioned in Finding 21 makes use of this stored energy, stating that one object of the invention was to “utilize the energy stored up in the mechanism while swinging it into the breech.” True it is said that it is used for a different purpose — that of preventing the slamming of the plug — although it would seem that this would be increased by the use of this energy, but in any event the statement in relation to the purpose is merely what was in the mind of the inventor. In plaintiff’s apparatus this force or energy is created in exactly the same manner. The designation in the Smith-Asbury patent of the purpose in the mind of the inventor makes no change in the manner in which the force was created or its effect when applied. So also the statement in plaintiff’s patent of the purpose for which the force is intended to be applied does not alter the situation. It is not what was intended but what is done that determines the nature of the device, and the utilization of this force was not new. When the inventor of the apparatus of plaintiff’s patent reached the point where the swinging carrier with breech plug attached was brought to rest against the breech block, he knew that *587 be bad in tbe breecb plug this so-called stored energy which must be expended in some manner. He permitted it to be expended in the further movements of the breech plug controlled by the variable cam but we think it manifest even to persons not skilled in the art that this could be done. We do not think this showed invention, but on the contrary think it would have required considerable inventive genius to proceed in any other way. The stored energy was there and, as we have said above, it must be expended in some manner; also it was quite obvious that it would be expended in a movement of the plug unless this movement was checked or stopped, and that this movement could be controlled as far as it went by a variable cam. Moreover, the Smith-Asbury patent, which defendant was licensed to use, permitted the stored energy to be utilized to this extent. But this patent had also a device for applying a positive force to the plug to bring its movements to completion. The Smith-Asbury patent was a two-way mechanism and did not employ the cylindrical gas check, but the matter of constructing a three-way mechanism had already been set out in previous patents, and it was within the knowledge of one skilled in the art to add to the Smith-Asbury patent the elements necessary to make a three-way mechanism. For the reasons stated above, we think there was no invention in plaintiff’s patent, either in its elements or its combination.
With the purpose of determining without any working model how plaintiff’s apparatus would work, the testimony shows that a model of defendant’s device was used (this model being offered in evidence) from which was taken one or the other of the cams used in the breech mechanism. It was then operated and found that it would work when the carrier was swung smartly against the breech block, as there was then sufficient momentum imparted to the plug to carry it through the necessary movements, but when it was operated slowly it stuck or jammed in such a way as to render the gun useless. The reason for this was plainly the fact that when the longitudinal movement of the plug was changed into rotary, or vice versa the rotary movement into longitudinal, it was caused by a change in the line of *588 the cam surface upon which the roller operated. This slow operation necessarily tended to retard the progress of the roller on the cam with the result above stated. See Findings 6 and 13.
. The evidence shows also that when breech loading cannon using a cylindrical gas check were repeatedly fired, compression on the gas check caused friction in starting the opening of the breech, and the force required was sometimes such as to make it necessary to employ more than one man on the operating lever. The evidence further shows that if an apparatus similar to plaintiff’s were used in actual warfare other factors might reduce or destroy the kinetic energy in the plug. For example, if the muzzle of the gun were elevated to obtain as great a range as possible; or, in case of guns mounted on shipboard, the rolling of the ship in a heavy sea.
We have considered how plaintiff’s apparatus will function if operated slowly, because in plaintiff’s exceptions to the findings it is several times stated that the teachings asserted in the patent are to the effect that slow operation is contemplated. We have also discussed the effect of slow operation in closing the breech. It will be noted that in opening the breech the operation starts with a rotary movement of the plug, disengaging the threads. This rotary movement is transformed so as to give a longitudinal movement to the plug, but the longitudinal movement is very slight indeed because the pitch of the threads of the screw is very slight. In fact, it is so slight as to be almost negligible, yet it is assumed that by this movement of the plug caused by the rotary motion in disengaging the threads when the roller strikes the change in the surface of the cam, described above, it will be given sufficient momentum to overcome the resistance created thereby and complete its longitudinal movement.
The fact that a device works imperfectly or occasionally fails entirely does not necessarily make a patent upon it invalid. Many important inventions as first designed and operated often failed, but where they accomplished something never before attained, or improved on anything before accomplished, they were patentable. Plaintiff’s patent re *589 cites that it is upon an improvement. We think it is not an improvement but is instead a retrogression. The three-way .mechanisms in prior patents all used a positive device to prevent the necessary movements of the plug from being halted and were certain in their operation. It seems to us clear that the evidence shows' such defects in plaintiff’s apparatus that it could not have any practical or beneficial use for military purposes at the time the patent was issued. This view is supported by the fact there is no evidence that any government ever thought it worthwhile to make a trial of it or that the inventor or present owner of the patent ever offered to make a demonstration of its effectiveness before military or other experts. We think that plaintiff’s apparatus was so imperfect and .uncertain in its operations as to be impractical and incapable of serving any useful purpose. If this conclusion is correct, it was not patentable. We do not rest our decision on this conclusion, but rather on our previous holding that there was no invention and, as will next be shown, that there was no infringement.
Even if it should be found that plaintiff has a valid patent, we are clear that the device used by defendant did not infringe it. We think it has' been shown plainly that all of the elements used in plaintiff’s patent are old, but assuming that there is something new in the utilization of stored energy, the apparatus used by defendant shows a different combination in which positive devices provide a direct force for carrying on all the necessary movements of the plug. The forward sliding movement of the plug after the carrier has been swung against the breech in closing does not depend at all upon the momentum or energy of the plug but is operated and controlled by a positive device. This means is set out in Finding 13 in which, among other things, it is said:
The plug cam 12 and follower 11 applies a positive axial force for producing sliding movement of the plug on the spindle 6a both in closing and in opening.
The finding further shows that if this provision were not made the mechanism would be liable to jam, especially on slow movement.
*590 In the operation and in the function of this device, there is no counterpart in plaintiff’s patent. The inclusion of this feature in defendant’s combination creates one different from that of plaintiff and being made up of old elements could not infringe plaintiff’s patent. The mechanism of defendant having this positive force is not subject to the uncertainty of plaintiff’s mechanism and can not fail. The function of its elements is not for the utilization of kinetic energy in the breech operation but to provide a positive and direct operation so that it is at all times and in all movements positively under the control of the force applied to the operating end of the lever. Besides this, in the defendant’s device, the plug being positively rotated, the cam on the plug can not be said to be for the purpose of translating or transforming the momentum of the longitudinal movement of the plug into rotary movement and is not intended to effect this result which is accomplished through the positive device. It therefore did not function in the same manner. It is true that kinetic energy is present in the plug in varied amounts depending upon the speed at which the breech mechanism is opened and closed, but this is merely incidental to the operation of the device and exists in accordance with a well known law of physics.
The defendant’s mechanism also has a positive method of producing the rotary movement of the plug necessary in locking the threads. This is described in the last paragraph of Finding 12. A similar device was used in the Smith-Asbury patent and is described in the patent in suit. It is not discussed, however, in the argument on behalf of plaintiff probably because its use involves something in the nature of a contradiction of the claim now made by plaintiff that the stored energy is sufficient to carry the plug through all of its necessary movements. In plaintiff’s apparatus, a positive force can be applied only to the swinging and the rotary movement, but in defendant’s apparatus, as we have seen, there is a positive device also for the longitudinal movement of the plug.
It is contended on behalf of plaintiff in effect that the operation of the variable lead cam in the apparatus used by defendant is the same and that the parts function the *591 same as those in plaintiff’s patent. We think we have shown that this is not correct, hut in any event defendant took nothing but what was old in using the variable lead cam and placed it in a new combination. As we have shown before, all variable lead cams are used for varying the movement of some other part of a mechanism. The principles upon which variable lead cams operate, the manner in which they could be used, and the construction of the cams for different and varying movements, had all long been known to those skilled in the art and plaintiff could not' appropriate an old principle and old features so as to prevent another party from using them in new and different combinations. If the rule were as plaintiff contends, we think the operation of the patent laws would be to restrict and retard invention rather than to encourage it. Upon the whole we conclude that defendant’s apparatus did not infringe the plaintiff’s patent and have so found.
In Eobinson on Patents, Yol. Ill, sec. 922, it is said with reference to the infringement of a patent for a combination:
A combination is a group of instruments or operations united under a co-operative law. Its identity depends upon the presence in the combination of each one of these elements or its equivalent, and upon their co-operation in this specific manner to produce the ultimate result. Hence any change in the number of its elements, or in their essential character, or in their mode of co-operation, is a departure from the substance of the combination, and constitutes a different invention.
And also that:
The infringement of a combination-patent therefore consists in the manufacture, use, or sale of any combination in which precisely the same elements or their equivalents are united under the same co-operative law;
citing a number of cases in support of the rule stated above which, applied to the facts in the case, we think definitely shows there was no infringement of plaintiff’s patent by the use of the apparatus of defendant.
The findings made by the commissioner of this court are such that if correct they would be fatal to plaintiff’s case. *592 Counsel for plaintiff have filed exceptions to nearly all of them and argued these exceptions at great length. It is not possible within the reasonable limits of an opinion to consider all of the objections to the findings made by plaintiff. It is sufficient to say here that after a careful examination of the evidence we conclude that the ultimate findings of the commissioner as to the validity of the patent and the matter of infringement are correct and with some slight changes and additions we have adopted the commissioner’s findings.
It follows that plaintiff’s petition must be dismissed and it is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, 'Ohief Justice, concur.